## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**June 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.P.-1 and C.P.**

**No. 17-1021** (Raleigh County 2017-JA-46 and 47)

## MEMORANDUM DECISION

Petitioner Father A.P.-2., by counsel Adam D. Taylor, appeals the Circuit Court of Raleigh County's October 20, 2017, order terminating his parental rights to A.P.-1 and C.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Thad A. Bowyer, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights when he did not have effective assistance of counsel.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 22, 2017, the DHHR filed an abuse and neglect petition against petitioner alleging that petitioner and the mother engaged in domestic violence in the children's presence. The children disclosed to a Child Protective Services ("CPS") worker that their parents argued and fought, and that they were scared at times during the fights. The mother disclosed to the CPS worker that she and petitioner engaged in domestic violence. She further explained that the fights scare the children and that "her son holds his hands over his ears yelling '[d]addy[,] stop it.'" The mother also disclosed that she had used multiple illegal substances in the past and that she and petitioner still smoked marijuana. On March 8, 2017, the circuit court held a preliminary hearing, which petitioner and the mother both waived. The circuit court ordered both parents to undergo psychological testing, including a substance abuse evaluation.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner have the same initials, they will be referred to as A.P.-1 and A.P.-2, respectively, throughout this memorandum decision.

1

On April 26, 2017, the circuit court held an adjudicatory hearing. A CPS worker testified that when she met with the parents on February 3, 2017, prior to the filing of the petition, the mother admitted to past substance abuse and that she and petitioner continued to smoke marijuana. She explained that, while the mother initially agreed to drug screen on that particular day, petitioner refused and both parents subsequently left. Since that interaction, petitioner tested positive for marijuana and one of the screens showed high levels of creatinine, which indicates that a substance was taken to disguise the drug screen. The CPS worker testified regarding the mother's admissions of domestic violence between her and petitioner. According to the CPS worker, the mother indicated that the children were afraid during the instances of domestic violence. The CPS worker testified that she attempted to have conversations with petitioner on February 3, 2017, but he refused to cooperate, denied all allegations of abuse and neglect, and left abruptly. She also stated that on this day, petitioner appeared to be under the influence and acted "hyper" and "high strung." The CPS worker further explained that both parents were cooperative at a multidisciplinary treatment team meeting at a later date. On cross-examination, the CPS worker testified regarding a January 27, 2017, incident wherein police responded to domestic violence between petitioner and the mother. She testified that, according to the police report, the mother told the police that petitioner hit her with a flashlight and smacked her. She testified that she was not aware of any domestic violence directed towards the children. Upon cross-examination by the guardian, the CPS worker explained that her February 3, 2017, meeting with the parents was in response to a call to a different CPS worker regarding the children's fear of petitioner. A protection plan was implemented following that call.

The mother testified regarding the domestic violence incident wherein the police were called. She explained that she believed that the children were at their aunt's house, but her son was actually on the porch yelling at his parents to "just quit" fighting. She also admitted to smoking marijuana but stated that she had been clean from other substances for three years. She further explained that she self-medicated with marijuana and that petitioner self-medicated his attention deficit hyperactivity disorder with marijuana. She stated that petitioner was never violent and never hit her. She continued to explain away the January 27, 2017, incident and stated that it arose from neighbors threatening the children. She stated that she and petitioner were very mad and that she eventually calmed down, but petitioner remained upset. According to the mother, she pushed petitioner as he made threats toward the neighbors. On cross-examination, the mother explained that the children did not live in the home, but at their aunt's house approximately 150 feet away, and that they do visit the mother and petitioner during the day and spend the night on occasion. Following the mother's testimony, petitioner declined to testify on his own behalf. However, the circuit court asked if he had used any substances in the last twenty-four hours and petitioner responded in the negative. Petitioner's counsel informed the circuit court that she believed that petitioner was able to knowingly make the decision not to testify.

The circuit court ordered the parents to drug screen immediately following the hearing. Petitioner, however, was incapable of providing a specimen for a drug screen and the mother refused to screen. Both screens were deemed administrative positives. Thereafter, the circuit court entered an order on April 28, 2017, adjudicating petitioner and the mother as abusing parents. The record indicates that the DHHR arranged transportation to drug screenings for petitioner and the mother. However, on September 21, 2017, the CPS worker reported that when

she arrived to the parents' home, petitioner's mother informed her that petitioner and the mother had just left. On September 26, 2017, the CPS worker took only the mother to drug screen.

According to the guardian's report, on August 24, 2017, criminal charges were filed against petitioner for domestic violence and family members reported that domestic violence between petitioner and the mother continued to be an issue. The guardian further reported that the parents failed to attend their psychological evaluations and substance abuse assessments, have any visitation with the children since April of 2017, nor submit to drug screens as ordered by the circuit court. The record indicates that petitioner was aware of the scheduled psychological evaluation because he called to reschedule after missing the first appointment, but still did not attend after he rescheduled. The guardian recommended termination of the parents' parental rights to the children.

On October 18, 2017, the circuit court held a dispositional hearing. Neither petitioner nor the mother attended the hearing, but both were represented by counsel. Petitioner's counsel informed the circuit court that she had not spoken with him for approximately one month and that her office called him and left a message advising him of the dispositional hearing. She also informed the circuit court that it is her office's standard practice to send a letter to inform clients of hearing dates. Petitioner's name was called three times before proceeding with the hearing. The DHHR presented both parents' drug screen results which indicated that petitioner missed eight out of ten drug screens. The circuit court found that the parents "have done nothing to try and correct the abuse and neglect that took place in this case, and they've done nothing to exercise the rights that parents normally exercise." The circuit court further found no reasonable likelihood that petitioner or the mother could substantially correct the conditions of abuse and neglect in the near future and that termination of their parental rights was in the children's best interests. The circuit court ultimately terminated petitioner's parental rights in its October 20, 2017, order.[2] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2]The mother's parental rights were also terminated. According to the parties, the permanency plan for the children is adoption by their paternal great-aunt and uncle.

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating his parental rights when he did not have effective assistance of counsel. In support of his argument, petitioner alleges that he had difficulties contacting counsel, counsel failed to advise him of the benefits of stipulation or to move for an improvement period, and that if not for counsel's ineffective assistance, his parental rights would still be intact. We find no merit to these arguments.

It is important to note that this Court has never recognized a claim of ineffective assistance of counsel in an abuse and neglect proceeding, and we decline to do so here, especially in light of the fact that, under the limited circumstances of this case, petitioner's counsel provided him with effective representation below. Petitioner first asserts that counsel failed to inform him of the benefits of stipulating to adjudication. However, petitioner failed to explain what, if any, benefits he would have received if he stipulated to adjudication and he failed to make any reference to authority or the record to support this argument. Petitioner also argues that he had "severe difficulties" communicating with counsel and with the DHHR workers.[3] However, there is no evidence to indicate that petitioner made any efforts to contact his attorney. In fact, counsel called petitioner at his last known number and left a message, in addition to sending him a letter in the mail to inform him of the date and time of the dispositional hearing. Moreover, upon a review of the record, there is no evidence that petitioner brought any of the issues regarding counsel's alleged ineffective assistance to the attention of the circuit court. Therefore, we find petitioner is not entitled to relief in this regard.

Petitioner further argues that counsel failed to advise him to move for an improvement period and he was unaware he could do so. He also seems to argue that he would have received an improvement period if he had stipulated to adjudication. However, he fails to support this assertion with any authority or citation to the record. West Virginia Code § 49-4-610 governs improvement periods in abuse and neglect proceedings and requires a parent to "demonstrate[ ], by clear and convincing evidence, that [the parent] is likely to fully participate in the improvement period." Petitioner failed to meet this burden because he failed to comply with the circuit court's orders to participate in psychological testing, a substance abuse evaluation, and drug screens. Evidence was presented at the dispositional hearing that petitioner missed eight out of ten drug screens during the proceedings and failed to visit with the children after April of 2017, due to his failure to drug screen. Petitioner declined to testify on his own behalf at the adjudicatory hearing or present any evidence in support of an improvement period. The record also shows that petitioner denied the allegations of abuse and neglect, particularly the domestic violence that he subjected his children to, despite evidence to support the same. Therefore, even

---

[3]While petitioner argues that he had difficulties contacting DHHR workers, this assertion is irrelevant to his claim of ineffective assistance of counsel and unsupported by evidence in the record. Furthermore, although he blames his missed appointments and visitation on his inability to contact the DHHR to schedule transportation, according to the record, transportation to drug screens was arranged for petitioner, but he opted not to use it.

4

if he had moved for an improvement period, petitioner did not meet the burden to receive one, regardless of whether he stipulated to adjudication.

Finally, we find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

As discussed above, petitioner was ordered by the circuit court to participate in a psychological examination, substance abuse evaluation, and drug screens, but failed to comply. Moreover, petitioner denied the allegations of abuse and neglect that were supported by evidence in the record. Based on this evidence, the circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was in the children's best interests. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 20, 2017, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: June 11, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating.

5